IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VITO ZACCARO,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL F. SHEAHAN, in his official<br>capacity as Sheriff of Cook County, Illinois,<br>THE COUNTY OF COOK, a unit of local<br>Government, METROPOLITAN<br>ALLIANCE OF POLICE, CHAPTER 222,<br><br>    Defendants. | Case No. 04 C 4271<br><br>HONORABLE CHARLES R. NORGLE |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Defendants' Motion for Summary Judgment brought pursuant to

Federal Rule of Civil Procedure 56. For the following reasons, Defendants' Motion for

Summary Judgment is granted.

**I. BACKGROUND**[1]

**A. Facts**

This case arises out of Plaintiff Vito Zaccaro's employment with the Cook County

Sheriff's Department (the "Department"). In July of 1988 Vito Zaccaro ("Zaccaro") entered into

---

[1] The court notes that Plaintiff failed to comply with Local Rule 56.1. Local Rule 56.1(b)(3)(A) requires that the non-moving party file a reply, including "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Koszola v. Bd. of Educ., 385 F.3d 1104, 1108 (7th Cir. 2004). The ramifications of failing to submit an appropriate factual statement in opposition to a motion for summary judgment are significant: "the Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy." Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994); see Cady v. Sheahan, 467 F.3d 1057, 1060 (7th Cir. 2006). Thus, the court assumes the facts to be as they are represented in the Defendant's properly framed and documented statements.

the Department as a cadet. Since the completion of his training, Zaccaro has worked as a Deputy Sheriff Correctional Officer. Zaccaro also served as a union steward for the Metropolitan Alliance of Police (MAP) from early 2000 until August 27, 2001. Zaccaro continued to campaign for the union, distribute literature, and collect union authorization cards through January of 2003.

While serving as a union steward, Zaccaro filed grievances on behalf of union members subjected to disciplinary actions by the Defendants. Zaccaro claims that both during and after his tenure as a union steward he was subjected to disciplinary actions on July 25, 2001, August 25, 2001, August 28, 2001, and June 22, 2002. Zaccaro does not describe the events surrounding the 2001 action. The June 2002 action is addressed by both parties and supported by a Disciplinary Action Form ("DAF") dated June 22, 2002. Then, on October 5, 2006, Zaccaro was issued a fifteen-day suspension. See Def.'s Reply, at 5.

Furthermore, Zaccaro supports his allegations of retaliation by the Defendants with the deposition of another Cook County Sheriff's employee, Charles Sires ("Sires"). In 2003, Sires spoke with Joe Consolo ("Consolo"), a legal advisor to a director at the Sheriff's office, William Wallace ("Wallace"), regarding Zaccaro. Sires claims Consolo said that Zaccaro was a "troublemaker" and "that they were going to hammer him and get rid of him once and for all." Consolo allegedly added that "he just didn't like [Zaccaro] period." Additionally, Sires claims that sometime in 2003 or 2004, while he was in Wallace's office, Sires asked Wallace why there were folders with Sires' name and Zaccaro's name on his bookshelf. Wallace allegedly replied that "those are the people I'm gonna get rid of." At the time of this Complaint, Zaccaro was working in the Department of Corrections ("DOC") External Operations.

2

## B. Procedural History

On June 25, 2004, Zaccaro filed his Complaint alleging his employer retaliated against him for exercising his right to freedom of association and speech, in violation of 42 U.S.C. § 1983. Zaccaro filed his First Amended Complaint on November 2, 2004. On December 6, 2006, Defendants filed their Motion for Summary Judgment. Zaccaro filed his Response on January 29, 2007 and Defendants Replied on February 13, 2007. Defendants' Motion for Summary Judgment is now fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000); see also Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp., 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See FED. R. CIV. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment

is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hull, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. See Szymanski, 231 F.3d at 364. Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d. 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. Statute of Limitations

As an initial matter, Defendants argue that Zaccaro's case is barred by the statute of limitations. In actions filed pursuant to 42 U.S.C. § 1983, courts look to the statute of limitations for personal injury in the state where the injury occurred. Savory v. Lyons, 469 F.3d 667, 672 (7th Cir. 2006). Under Illinois law, the statute of limitations for Section 1983 claims is two years. 735 ILL. COMP. STAT. 5/13-202; Savory, 469 F.3d at 672. Section 1983 claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated. Savory, 469 F.3d at 672 (citing Kelly v. City of Chicago, 4 F.3d 509, 511 (7th Cir. 1993)).

Defendants claim that Zaccaro has not been subjected to any disciplinary since the DAF

4

was issued on June 22, 2002. Because Zaccaro filed this action on June 25, 2004, two years after the alleged discrimination, Defendants argue that Zaccaro's claim is time barred. Conversely, Zaccaro asserts that the statute began to run on July 3, 2002 with the tendering of the DAF. Zaccaro stated in his deposition that he was subjected to disciplinary action fifteen minutes after he filed a grievance with the MAP union regarding a "double tier assignment" on July 3, 2002. Neither party provides the court with a description or the significance of "double tier assignments."

Zaccaro further seeks to avoid the statute of limitations by relying on the continuing violation doctrine. The Seventh Circuit has applied the continuing violation doctrine when the plaintiff could not reasonably be expected to perceive the alleged violation before the limitations period has run, or when the violation only becomes apparent in light of later events. Savory, 469 F.3d at 672. In support of the application of this doctrine, Zaccaro argues that the tendering of the June 22, 2002 DAF on July 3, 2002 and the consequent 15-day suspension in October of 2006 form the basis of his complaint and thus the action is timely. See Def.'s Reply at 5.

Defendants argue that Zaccaro's "long history of perceived persecution" is inconsistent with the assertion that Zaccaro had no reason to suspect he was a target of discriminatory practices. Defendants claim that because four years lapsed between the issuance of the DAF and the suspension without a single retaliatory act, the continuing violation doctrine is inapplicable. Defendants also state that the record does not support Zaccaro's claim that he was served with the June 22, 2002 DAF on July 3, 2002.

Zaccaro alleges that he did not know he was being retaliated against for filing his grievance regarding the double tier assignment until the DAF was tendered to him on July 3,

5

2002. The fact that Zaccaro filed this grievance with the union on July 3, 2002, is consistent with

his claim that did not know that the Defendants retaliated against him until sometime after June

22, 2002. Drawing from these specific facts in the light most favorable to the Plaintiff, see

Spiegla, 371 F.3d at 935, the court concludes that the statute of limitations began to run from

July 3, 2002 when Zaccaro knew that his rights had been violated. Savory, 469 F.3d at 672.

Because Zaccaro filed this action on June 25, 2004, the action is not barred by the applicable

statute of limitations.

## C. Section 1983 First Amendment Retaliation Claim

In order to state a claim under Section 1983, a plaintiff must allege that the defendants

deprived him of a right secured by the Constitution or laws of the United States, and that the

defendants acted under color of state law. Brokaw v. Mercer County, 235 F.3d 1000, 1009 (7th

Cir. 2000).

In order to determine whether "a government employee's speech is constitutionally

protected, we apply the two-step Connick-Pickering test." Schad v. Jones, 415 F.3d 671, 674

(7th Cir. 2005); Connick v. Myers, 461 U.S. 138, 103 (1983); Pickering v. Bd. of Educ., 391

U.S. 563 (1968). First, the court must "determine whether the employee spoke 'as a citizen upon

matters of public concern.'" Schad, 415 F.3d at 674 (quoting Connick, 461 U.S. at 147-48).

Under this analysis, the court examines "'the content, form, and context of a given statement', as

revealed by the whole record." Id. Second, the court balances "the interests of the [employee],

as a citizen, in commenting upon matters of public concern and the interest of the State, as an

employer, in promoting the efficiency of the public services it performs through its employees."

Id. Ultimately, the "determination of whether the speech is constitutionally protected is a

question of law for the court." Id. (citing Kokkinis v. Ivkovich, 185 F.3d 840, 843 (7th Cir. 1989)).

The threshold inquiry is whether the employee was speaking as a citizen; only then does the court inquire as to the content of the speech. Garcetti v. Ceballos, 126 S. Ct. 1951 (2006); Mills v. City of Evansville, Ind., 452 F.3d 646, 647-48 (7th Cir. 2006). Public employees speaking "pursuant to their official duties" speak as employees, not as citizens. As a result, these employees are not protected by the First Amendment regardless of the content of their speech. Spiegla v. Hull, 481 F.3d 961, 965 (7th Cir. 2007) (citing Garcetti, 126 S. Ct. at 1959-60).

## 1. Zaccaro's Retaliation Claim

Zaccaro argues that the Defendants did not retaliate against him because of statements he made pursuant to his duties as a corrections officer. Instead, Zaccaro claims the retaliation occurred as a result of his speech concerning union matters. Because Zaccaro's activities as a union member are not required as part of his duties as a corrections officer, then Garcetti's limitations on employee's First Amendment rights do not apply to this case. Therefore, it is clear that Zaccaro spoke as a citizen, and not an employee, when he filed grievances on behalf of himself or others to the union. See Mills, 452 F3.d at 648. With this threshold question satisfied, the court analyzes whether Zaccaro spoke on a matter of public concern.

A statement is protected under the First Amendment if it is "fairly characterized as constituting speech on a matter of public concern." Connick, 461 U.S. at 146. A matter of public concern is one that relates to any matter of political, social or other concern to the community. Id. By contrast, speech that furthers purely private interests, including communications made to improve an employee's working conditions, or that concerns a personal

7

employee grievance is not entitled to protection under the Constitution. <u>Gazarkiewicz v. Town of Kingsford Heights</u>, 359 F.3d 933, 941 (7th Cir. 2004); <u>Gustafson</u>, 117 F.3d at 1019; <u>Phares v. Gustafsson</u>, 856 F.2d 1003, 1008 (7th Cir. 1988).

Here, Zaccaro claims that after he ceased working as a union steward in August 2001, he continued to engage in "numerous instances of union activity." Pl.'s Resp., at 9-10. Zaccaro argues that these union activities form the basis of his complaint and are statements of a public concern. Defendants state that Zaccaro's reliance on his personal grievances fails to demonstrate that he engaged in constitutionally protected speech. The Defendants contend that Zaccaro's grievances filed with the union merely benefit himself and his fellow officers and thus do not involve matters of public concern.

The court does not find Zaccaro's blanket assertion that his "numerous instances of union activity" is persuasive evidence that he spoke on matters of public concern. Zaccaro has submitted no evidence to demonstrate that specific union activities in which he partook constituted protected speech. The grievance filed on July 3, 2002 was only intended to influence Zaccaro's working conditions. The Seventh Circuit has stated that when "speech concerns a subject of public interest but the expression addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern." <u>Marshall v. Porter County Plan Comm'n.</u>, 32 F.3d 1215, 1219 (7th Cir. 1994). Thus, Zaccaro's union grievance regarding the double tier assignment cannot be a "matter of political, social, or other concern in the community" protected by the First Amendment. <u>Connick</u>, 461 U.S. at 146.

8

## 2. Adverse Employment Action

Even if Zaccaro could establish that his speech was constitutionally protected, he has failed to demonstrate any adverse employment action. A change in employment circumstances is considered materially adverse if such a change is "more disruptive than a mere inconvenience or an alteration of job responsibilities." DeGuiseppe v. Village of Bellwood, 68 F.3d 187, 192 (7th Cir. 1995) (quoting Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). While Zaccaro has shown that he was transferred on two occasions, he has failed to specifically show how these transfers were adverse. Moreover, there is no evidence that Zaccaro actually served his fifteen-day suspension. Even if Zaccaro did complete his suspension, he has failed to establish how the suspension adversely affected him. Zaccaros's mere claim of adverse employment action "without factual support in the record will not defeat a motion for summary judgment." Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999)(quoting Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993)); see also Haywood v. North Am. Van Lines, Inc., 121 F.3d 1066, 1071 (7th Cir. 1997) ("Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment").

## 3. Retaliatory Motive

Additionally, Zaccaro has failed to demonstrate that the alleged adverse action was motivated by his union activities. Despite the claim that Sires' conversations with Consolo and Wallace took place long after July 3, 2002, Zaccaro relies on this conversation as evidence of a retaliatory motive.

However, "isolated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus."

9

Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 491 (7th Cir. 2007). Furthermore, "derogatory comments are relevant only when attributable to the person who made the adverse employment decision." Schreiner v. Caterpillar, Inc., 250 F.3d 1096, 1099 (7th Cir. 2001). Because Zaccaro has not shown that either Consolo or Wallace were the decision makers behind his transfers or the suspension, then Zaccaro has failed to establish that Defendants had a retaliatory motive in deciding to transfer or suspend him.

### 4. Municipal Liability

Lastly, Zaccaro has failed to establish any municipal liability. In order to maintain a § 1983 claim against the defendants in their official capacities, Zaccaro must demonstrate that the County's official policy or custom was the cause of his constitutional injury. Holmes v. Sheahan, 930 F.2d 1196, 1199 (7th Cir. 1991); see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). "[U]nconstitutional policies or customs can take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." Rasche v. Beecher, 336 F.3d 588, 597 (7th Cir. 2003).

Zaccaro claims that Sheriff Sheahan was "deliberately indifferent to the fact that the... [custom's]... known or obvious consequences would result in the deprivation of a constitutional right." Zaccaro submits no factual evidence to support this assertion. As the Defendants point out, Zaccaro has not identified even one other officer who suffered constitutional injury or was retaliated against by a person with final policy making authority. Because Zaccaro has not

presented any facts to support his claim of municipal liability, then the requisite criteria for a §

1983 claim has not been met. <u>See</u> <u>Desilva v. DiLeonardi</u>, 181 F.3d 865, 867 (7th Cir. 1999) ("a

brief must make all arguments accessible to the judges, rather than ask them to play archaeologist

with the record").

## III. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is granted.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 6-6-07